## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) |
| FAHMY ATEYYA, | ) CASE NO. 304-13942 |
| | ) |
| Debtor. | ) CHAPTER 7 |
| | ) |
| | ) JUDGE MARIAN F. HARRISON |
| | ) |
| CHESSER & ASSOCIATES, P.C., | ) ADV. NO. 305-0038A |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FAHMY ATEYYA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

This matter came before the Court upon the plaintiff's complaint asserting that the

debtor should not receive a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), (a)(3),

(a)(4)(A), and (a)(5). For the following reasons, which represent the Court's findings of fact

and conclusions of law, as required by Fed. R. Bankr. P. 7052, the Court finds that the relief

requested by the plaintiff in its complaint should be granted and that the debtor should be

denied a discharge in his bankruptcy case.

## I. BACKGROUND

1. The plaintiff is a Tennessee law firm located in Nashville, Tennessee.

2. The debtor, who lives in Antioch, Tennessee, filed his petition for relief under Chapter 7 on November 16, 2004.

3. The debtor does business as a sole proprietor under the trade name "Automotive Care."

4. In 1995, the debtor filed a previous petition for relief under Chapter 7 and received a discharge on August 23, 1995. The case was a "no asset" case.

5. The debtor, who is from Egypt, has lived in the United States for approximately twenty years.

6. The debtor married Barbara Ateyya in 1995, shortly after deportation proceedings were commenced against him.

7. From approximately February 1995 through December 2002, in two separate but related engagements, the plaintiff successfully defended the debtor in deportation proceedings before the United States Executive Office for Immigration Review and the Board of Immigration Appeals. Thus, the debtor was allowed to keep his green card and to work in the United States.

8. If the debtor had been deported, he would have potentially been subject to physical injury or persecution. In addition, it would have been dangerous for his wife, a United States citizen, to travel with him.

2-U.S. Bankruptcy Court, M.D. Tenn.

9.  The plaintiff's total bill for representation was between $44,000 to $45,000, of which the debtor paid $12,000 to $15,000. The remaining amount due is $29,746.79 with interest accruing at prime rate.

10. The parties had several conversations regarding the payment of the final bill, however, they were unable to reach an agreement.

11. In September 2004, the plaintiff commenced a civil action against the debtor in General Sessions Court for Davidson County, Tennessee, to collect the outstanding amounts owed on one of the engagements. A court date was set for this action to be heard on November 17, 2004. The debtor's Chapter 7 petition was filed one day before this trial date.

12. Other than the plaintiff, no other significant unsecured creditors are listed in the debtor's schedules. In fact, based on the testimony, it appears that the other three unsecured creditors listed in the debtor's bankruptcy case (Rehim Babaoglu, James Oatsvall, and Tune, Entrekin & White) have been paid in full. Some of the payments were made within 90 days of the bankruptcy petition.

13. In the debtor's bankruptcy schedules, filed under penalties of perjury, the debtor made several false statements. First, the debtor stated that he had no interests in unincorporated businesses when in fact he was the sole proprietor of the business "Automotive Care."

14. In his bankruptcy schedules, the debtor listed the amount of cash on hand and in his bank account as of the petition date to be approximately $1,225. On the day before the petition was filed, November 15, 2004, the debtor's bank balance was approximately $3,842.15, after the deposit of $2,235.

15. The debtor owned an automobile (1997 Chevy S-10), which was not listed as an asset on the bankruptcy schedules. He acquired the automobile from Ira Epstein (hereinafter "Mr. Epstein") sometime in 2004.

16. The debtor owned equipment, purchased on or about October 12, 2004, which was not scheduled as an asset. The acquisition cost of the equipment was approximately $5,969. The debtor claimed that the equipment is owned by Mr. Epstein. The evidence established that Mr. Epstein does not own the equipment and that the debtor attempted to keep the equipment from being liquidated as property of his bankruptcy estate.

17. On September 10, 2004, the debtor entered into a lease for commercial or industrial space in which he could operate "Automotive Care." The debtor provided the landlord, Unique Enterprises (James Oatsvall) with a $600 deposit. In his bankruptcy schedules filed with the Court, Schedule B, Line 3, concerning deposits with landlords, the debtor said he had "none." On schedule G, concerning unexpired leases, the debtor stated "none."

4-U.S. Bankruptcy Court, M.D. Tenn.

18. The evidence establishes that, as of the date of the bankruptcy petition, the debtor was the tenant in an unexpired lease of the property located at Unit 104B, 3418 Old Hickory Boulevard, Hermitage, Tennessee, and that he had paid a $600 deposit. While the debtor testified that the deposit was originally paid by a friend, the debtor also testified that he paid the $600 to the friend and would, therefore, be entitled to the deposit.

19. After the first meeting of creditors, the debtor was requested to produce records of his business activities. Although the debtor asserted that he kept records sufficient to file tax returns, he could produce only five repair orders (indicating revenues in the approximate amount of $600) reflecting business activity for the previous 12 months. Through his testimony, the debtor explained that the repair orders had been with his accountant. The debtor further testified that the accountant returned the documents to him but that he did not know what had happened to them. Nor did the debtor offer to produce these records at the time his accountant returned them.

20. The debtor produced no records concerning his frequent purchase and sale of automobiles. However, the debtor filed sales tax returns with the state of Tennessee, reporting sales over $45,000.

21. In the statement of financial affairs, the debtor listed his gross revenues for 2004 as $24,500. The evidence established that the debtor's gross revenues for

5-U.S. Bankruptcy Court, M.D. Tenn.

2004 were much higher. During 2004, the debtor, doing business as Automotive Care, generated gross revenues in excess of $65,000 in the repair and sale of automobiles. However, the debtor was only able to produce five pieces of paper indicating repairs that covered $600 in revenues for 2004.

22. On Schedules I and J, concerning average monthly income and expenses, the debtor listed average monthly income at $3,300 and average monthly expenses at $4,163. This statement, which was made under penalties of perjury, is not accurate.

23. The debtor could not have operated with a net loss of $863 per month income without accruing debt; yet, in the bankruptcy papers filed under penalties of perjury, only the three attorneys were listed as unsecured creditors with outstanding balances. Either this was a false statement about the unsecured creditors (identities, existence, amounts), there were undisclosed preferences to pre-petition creditors, or the debtor misstated his average monthly income, and/or overstated his expenses.

24. The debtor reflected no preferential payments to creditors on his statement of affairs. In fact, right before filing for bankruptcy, the debtor made preferential payments to Unique Enterprises, Metro Imports, his attorneys, and his wife.

25. After this adversary proceeding was filed, the debtor amended his schedules twice.

6-U.S. Bankruptcy Court, M.D. Tenn.

26. The debtor has failed to adequately explain the disposition or transfer of assets.

27. In August 2004, the debtor sold an automobile. The debtor failed to explain and identify the purchaser beyond that his name is "Jeff" at a specified address. More importantly, the debtor did not explain the disposition of $5,700 from the sale of the automobile. Despite the plaintiff's requests for production, the debtor produced no documents or other evidence indicating the disposition of the $5,700.

28. Twelve days before the filing of the bankruptcy petition (November 4, 2004), the debtor withdrew $3,400 from his bank account. The debtor has not explained the disposition of these funds. When asked to explain, the debtor stated that $1,800 was given to his landlord – $600 for a deposit and $1,200 for rent. However, the landlord's records reflect payment of the $600 deposit on September 10, 2004, and $1,200 paid on October 1, 2004, prior to the withdrawal made by the debtor. As explanation, the debtor testified that the $600 was used to pay his friend who originally paid the deposit for him and that the landlord's books were in error regarding the payment of rent. Even taking the debtor's testimony as true, the transfers would be undisclosed preferential payments in excess of $1,000.

29. The debtor was asked about any equipment that he acquired after the filing of the bankruptcy petition. In the debtor's response to this interrogatory, he

answered "none." The evidence shows the acquisition of additional equipment only one month after the filing of the bankruptcy petition.

30. By interrogatories, answered on June 8, 2005, the debtor stated under oath that the current debt to Shawn Henry at Tune, Entrekin & White was $500. This bill has now been paid in full, post-petition, without prior court approval.

31. The debtor was contemplating the filing of the bankruptcy case as early as eight to ten months before the actual petition date. His bankruptcy attorney was paid approximately $400 in February 2004 for services to be rendered as bankruptcy counsel for the debtor. This payment, as well as the payments to Shawn Henry at Tune, Entrekin & White are not listed in the debtor's statement of financial affairs.

32. The debtor has filed three different sets of schedules concerning his income and expenses. The first statement filed with the Court indicated a shortfall of over $800 a month between revenues and expenditures. The second set of schedules filed by the debtor indicated that the debtor's income exceeded expenses by over $1,000 a month. The third set of schedules concerning income and expenses reflects a differential of $8 between income and expenditures. The third set, however, requires consideration of $400 a month received "from family and friends." This is unexplained and undocumented. No documents were produced by the debtor, his wife, Barbara Ateyya, or his

8-U.S. Bankruptcy Court, M.D. Tenn.

father-in-law, Reddell York, indicating the transfer of funds, on a monthly

basis, of approximately $400. The third set of schedules also reflects $1,904

in business expenses per month, but contrary to the directions on the schedules,

no detailed statement of said expenses was attached.

## II. ARGUMENTS

The plaintiff asserts that the debtor should not receive a discharge for the following

reasons:

1. The debtor violated 11 U.S.C. § 727(a)(2)(A) by transferring property within one year before filing his bankruptcy petition with the intent to hinder, delay, or defraud a creditor.

2. The debtor violated 11 U.S.C. § 727(a)(2)(B) by transferring assets post-petition.

3. The debtor violated 11 U.S.C. § 727(a)(3) by knowingly and fraudulently giving false reports and accounts and by failing to provide sufficient records.

4. The debtor violated 11 U.S.C. § 727(a)(4)(A) by failing to disclose pre-petition transactions.

5. The debtor violated 11 U.S.C. § 727(a)(5) by failing to satisfactorily explain the loss of assets.

## III. DISCUSSION

To be entitled to relief under Chapter 7, a debtor must honestly disclose his assets and

truthfully respond, under penalties of perjury, to the questions posed to him concerning his

financial affairs, assets, and liabilities. Secondly, to obtain the discharge relief in a Chapter 7 bankruptcy case, a debtor cannot willfully provide false information in the proceedings. Thirdly, the debtor must have maintained and produced, if requested, documents from which his financial affairs may be explained. If the debtor fails to comply with the duties set forth above, he may be denied a discharge. *See, e.g., Arango v. Third Nat'l Bank in Nashville (In re Arango)*, 992 F.2d 611, 613 (6th Cir. 1993).

When an objecting party asserts that a debtor is not entitled to a discharge, it is incumbent upon that party to show all of the elements necessary to deny the debtor his discharge. *Montgomery Ward & Co., Inc. v. Gordley (In re Gordley)*, 38 B.R. 630, 631 (Bankr. S.D. Ohio 1984). Proof of each of these elements must be by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Barclays v. Adams (In re Adams)*, 31 F.3d 389, 393-94 (6th Cir. 1994).

## A. 11 U.S.C. § 727(a)(2)(A) and (B)

Under 11 U.S.C. § 727(a)(2), a debtor is denied discharge if:

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the
petition.

Accordingly, the plaintiff must prove actual intent to hinder, delay, or defraud a
creditor. *In re Ligon*, 55 B.R. 250, 252 (Bankr. M.D. Tenn. 1985). If a specific intent to
defraud creditors is not shown, a discharge should be granted. *See Moreno v. Ashworth
(In re Moreno)*, 892 F.2d 417, 419 (5th Cir. 1990).

A finding of actual intent may be based on "persuasive and convincing" circumstantial
evidence. *In re Ligon*, 55 B.R. at 252. Examples of such "badges of fraud" include the lack
or inadequacy of consideration given, the family, friendship, or close associate relationship
between the parties, the retention of possession, benefit, or use of the property in question,
the existence or cumulative effect of a pattern or series of transactions or course of conduct
after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by
creditors, the general chronology of the events and transactions under inquiry, whether all
or substantially all of the debtor's property was transferred, or that the transfer so completely
depleted the debtor's assets that the creditor has been hindered or delayed in recovering any
part of the judgment. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir.
1983); *Emmett Valley Assoc. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir.
1992).

The debtor has attempted to cover up his improper or questionable activity in this case. Twelve days prior to the filing of the bankruptcy petition, the debtor withdrew approximately $3,400 in cash from his bank account. In discovery, the plaintiff requested that the debtor explain the disposition of the funds. In response, the debtor produced a purported "receipt" from the landlord. The receipt produced by the debtor does not coordinate with the records of the landlord concerning the dates and amounts of payments. Thus, the debtor has not explained adequately the disposition of the funds withdrawn from his bank account on the eve of bankruptcy. The debtor claims that the money was used to pay bills and his landlord. The Court finds that the debtor was not a credible witness, and his statements regarding payments to his landlord with these funds is not corroborated with the landlord's records. Moreover, there are no records produced to corroborate the debtor's contention that the other monies were used to pay bills.

The debtor's banking records also evidence a concerted effort to hide, conceal, or transfer assets which would otherwise have been available for payment of creditors in his Chapter 7 bankruptcy case. His checking account indicates an effort to divest himself of any funds which could not be claimed as exempt.

The debtor made a concerted effort to avoid leaving any assets in his bankruptcy estate. According to the debtor's November 2004 bank statement, the debtor had $3842.15

12-U.S. Bankruptcy Court, M.D. Tenn.

on November 15, 2004. By November 16, 2004, the balance of the debtor's bank account was reduced to $1359.01.

Based on these facts, the Court finds that the debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B).

## B. 11 U.S.C. § 727(a)(3)

11 U.S.C. §727(a)(3) provides that a debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which their financial condition could be determined will be denied a discharge unless such act or failure was justified under all of the circumstances of the particular case. Once again, the burden of proof is on the party objecting to the debtor's discharge. *Energy Mkgt. Corp. v. Sutton (In re Sutton)*, 39 B.R. 390, 398 (Bankr. M.D. Tenn. 1984).

The purpose of this section is to enable creditors, with the assistance of adequate books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987). In determining the reasonableness of the debtor's records, a court should consider:

> education, experience, and sophistication of the debtor; the volume of the
> debtor's business; the complexity of the debtor's business; the amount of credit

extended to the debtor in his business and any other circumstances that should
be considered in the interest of justice.

*Id.* at 236 (citations omitted).

The proof established that the debtor did not keep adequate records. He sold a vehicle
four months prior to filing his bankruptcy petition but did not produce records to reflect the
disposition of the vehicle or of the proceeds from the sale. In addition, the debtor withdrew
$3400 from his bank account twelve days prior to filing his bankruptcy petition, however,
the only explanation the debtor provided was his testimony that he used it to pay bills. The
most glaring lack of documentation relates to the repair and sale of vehicles. The debtor only
produced five repair bills for 2004 and could not explain what happened to the rest of his
business records after his accountant returned them post-petition.

The inadequacy of the debtor's records is clear. Based on his testimony, the Court
finds that the debtor was sufficiently experienced and sophisticated to keep adequate records.
Moreover, the debtor's business was straightforward, and record keeping should not have
been difficult. Instead, it is clear to the Court that the lack of records was part of the debtor's
overall scheme to conceal his true financial affairs and business transactions.

Accordingly, based on 11 U.S.C. § 727(a)(3), the Court finds that the debtor's
discharge should be denied.

14-U.S. Bankruptcy Court, M.D. Tenn.

## C. 11 U.S.C. § 727(a)(4)(A)

Under 11 U.S.C. § 727(a)(4)(A), discharge can be denied if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. For the Court to deny discharge, it must find that the false oath or account was knowing and fraudulent. The plaintiff has the burden of proving by a preponderance of the evidence that the debtor knew the truth, but nonetheless, willfully and intentionally swore to what was false. *Buck v. Buck (In Re Buck)*, 166 B.R. 106, 108 (Bankr. M.D. Tenn. 1993); *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985); *Farmers Bank v. McCloud (In re McCloud)*, 7 B.R. 819, 821 (Bankr. M.D. Tenn. 1980). Moreover, the false oath or account must be of consequence to material issues in the bankruptcy case. *In re Buck*, 166 B.R. at 108.

In determining whether the false oath or account was material, the Court may consider the value of the omitted assets, whether the omission was detrimental to the creditors, whether the omission adversely affected the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition, or whether the omission interferes with the possibility of a preference or fraudulent conveyance action. If the false statement has no effect in the case, it is not grounds for denying a discharge. *6 Collier on Bankruptcy* ¶ 727.04[1][b] (15th ed. rev. 1999).

The complaining creditor need not show detrimental reliance upon false statements by the debtor in order to successfully prosecute an objection to the debtor's discharge. The creditor also need not show the debtor's intent to injure the creditor. *Matus v. Matus*, 303 B.R. 660, 677 (Bank. N.D. Ga. 2004). The creditor bears the burden of proving that the false oath or account was made about a material matter. Fed. R. Bank. P. 4005; *see also Swicegood v. Ginn*, 924 F.2d 230, 237 (11th Cir. 1990). The creditor must produce sufficient evidence that the debtor failed to disclose information with the intent to hinder the investigation of creditors. *Matus* at 677.

The statement of financial affairs requires the debtor to list, under oath, payments made within ninety days of the filing of the bankruptcy petition. The debtor did not truthfully do so. Considering all of the inaccurate statements made by the debtor under oath or penalty of perjury, and weighing them in the context of the debtor's attempts to avoid paying any sums to the plaintiff on its claim, the Court must find that the statements were made willfully and for the purpose of avoiding the plaintiff's claim. As a result, the debtor's discharge must be denied.

In the present case, the debtor made several false statements under oath. The debtor stated under penalties of perjury that he did not own approximately $5969 in equipment that was in his possession. Instead, he asserts that the tools were owned by Mr. Epstein. Despite

16-U.S. Bankruptcy Court, M.D. Tenn.

this assertion, the debtor claimed ownership of the equipment in his 2004 tax returns and received the tax benefit for depreciation of his equipment.

The debtor owned a 1997 Chevy S-10 vehicle. This vehicle was conveyed to him on or about May 12, 2004. The debtor paid Mr. Epstein $675 for the vehicle. Although the title may not have been transferred on the records of the state of Tennessee, there is no doubt about the ownership of the vehicle. In fact, as a result of the ownership of the vehicle, the debtor avoided paying taxes on income in excess of $9,000 during the year 2004.

The debtor failed to file truthful and accurate schedules and statements in the amendments. As established at trial, even the most recent amendments contain factually inaccurate information. Given the debtor's track record before and during this bankruptcy case, the Court must conclude that even these latest amendments are an attempt to deceive.

The Court cannot accept the debtor's flawed and many belated attempts to amend his bankruptcy schedules as evidence that he failed to intentionally mislead the Trustee, the creditors, or the Court. The amendments by the debtor were made only as the trial date in the adversary proceeding approached. While amendments are freely allowed in the bankruptcy process, and they are required when the debtor discovers that inaccurate information has been provided, to allow a debtor to avoid the consequences of false

statements under oath or concealment of assets by repeated last minute amendments would undermine the process. To do so would encourage debtors to be less than truthful in their schedules and to wait and see whether a creditor or the trustee objects to the discharge. If amendments were the panacea for false statements under oath, debtors would be encouraged to be marginal with the truth in their schedules and their answers under oath since they could always "amend" once they were caught in lies or intentional misstatements. *Henkel v. Green (In re Green)*, 268 B.R. 628, 656 (Bankr. M.D. Fla. 2001) (citations omitted).

Nor may the debtor blame his bankruptcy counsel for his problems. Even reliance on an attorney does not relieve a debtor of an affirmative duty to disclose, nor of the diligence required, to ensure to the Court that the sworn statements remain true. *In re Walker*, 323 B.R. 188, 196-197 (Bankr. S.D. Tex. 2005) (citing *In re Sholdra*, 249 F.3d 380, 383 (5th Cir. 2001)). "[A]dvice of counsel is not a defense when it is transparently plain that the property should be scheduled." *Hibernia Nat'l. Bank v. Perez*, 124 B.R. 704, 710 (E.D. La. 1991) (citations omitted).

The cumulative effect of these false statements is clearly material in this "no asset" case. The various misstatements regarding assets resulted in no money being paid to the plaintiff, the only remaining unsecured creditor. Most importantly, as stated in *Lewis v. Summers (In re Summers)*, 320 B.R. 630 (Bankr. E.D. Mich. 2005), this Court "cannot

condone the filing of slipshod schedules by a debtor who dismisses his paramount responsibility to be candid, accurate, and honest as a mere formality to be corrected later if it suits him, or not at all. The bankruptcy system simply could not function were this cavalier attitude accepted." *Id.* at 644.

Accordingly, the Court finds that the debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

## D. 11 U.S.C. § 727(a)(5)

11 U.S.C. § 727(a)(5) provides that a debtor who fails to satisfactorily explain any loss or deficiency of assets may not receive a discharge in bankruptcy. Initially, it is incumbent upon the plaintiff to prove that assets of the debtor are missing, and that the debtor has failed, upon request of the plaintiff, to satisfactorily explain the disappearance. Once the plaintiff has met this initial burden, the burden then shifts to the debtor to adequately explain the losses. *In re Sutton*, 39 B.R. 390, 397. Generally, the explanation required of the debtor must convince the court "of good faith and businesslike conduct." *Id.* (citations omitted).

All of the elements under § 727(a)(5) are present in this case. Moreover, the debtor was unable to adequately explain the loss of assets or that he acted in good faith or in a

19-U.S. Bankruptcy Court, M.D. Tenn.

businesslike manner. In fact, based on the debtor's testimony, the Court finds just the contrary. Specifically, the Court finds that the debtor was not a credible witness. His answers were at best evasive and confusing.

## IV. CONCLUSION

The debtor contemplated the filing of the bankruptcy petition as early as February, 2004. He had previously declared his intent to take action to avoid the claims of the plaintiff. The debtor has failed to keep records from which his financial affairs may be ascertained. He has made false statements under oath and under penalty of perjury. Prior to and after the filing of the petition, the debtor has disposed of assets and has failed to adequately explain their disposition. Finally, the debtor has concealed assets from the bankruptcy estate which should have been liquidated on behalf of the creditors.

Based on these facts, as more fully discussed above, the Court finds that the debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), (a)(3), (a)(4)(A), and (a)(5).

An appropriate order will be entered.

MARIAN F. HARRISON
UNITED STATES BANKRUPTCY JUDGE